GREGORY, Circuit Judge.
Jane Cline, Insurance Commissioner of the State of West Virginia, and the State of West Virginia (collectively referred to as “Petitioners”) brought suit against John Hawke, Comptroller of the Currency of the United States of America, pursuant to the Gramm-Leaeh-Bliley Act of 1999 (“GLBA”),[1] Petitioners seek review of a *394 preemption letter issued by the Office of the Comptroller of the Currency (“OCC”) regarding insurance laws of the State of West Virginia. In the preemption letter, the OCC opined that federal law preempted four provisions and a portion of a fifth provision of the West Virginia Insurance Sales Consumer Protection Act, an act regulating the sale of insurance by banks and other financial institutions. Petitioners’ suit challenges the authority of the OCC to issue such a preemption letter. For the following reasons, we dismiss the petition for review.
I.
Lawyers for the West Virginia Bankers Association[2] sent a letter to the Chief Counsel of the OCC on May 8, 2000, requesting the preemption of ten provisions of the West Virginia Insurance Sales Consumer Protection Act. See Letter from Sandra Murphy, Attorney, Bowles, Rice, McDavid, Graff & Love, to Julie Williams, Chief Counsel, Office of the Comptroller of the Currency, 1 (May 8, 2000) (J.A. 2-12)[3]. The OCC published notice of the request in the Federal Register on June 2, 2000, and sought comments as to whether federal law preempted the West Virginia statutory provisions. The OCC received sixty-seven comments in response to the published notice, including a response from Hanley Clark, former Insurance Commissioner for West Virginia. In a letter dated September 24, 2001, the OCC issued its opinion regarding the preemption of the West Virginia statutory provisions (“Preemption Letter”). The OCC concluded that four of the West Virginia statutory provisions, as well as a portion of a fifth provision, were preempted by federal law. Petitioners filed a petition for review of the Preemption Letter with this Court on September 20, 2002.
II.
This Court has jurisdiction over this case pursuant to Section 304 of the GLBA. Under that section, where there is a regulatory conflict between a State insurance regulator and a Federal regulator, including the preemption of a State law, the Federal or State regulator “may seek expedited judicial review of such determination by the United States Court of Appeals for the circuit in which the State is located .... ” Gramm-Leach-Bliley Act of 1999, Pub.L. No. 106-102, § 304(a) (1999). We must decide the petition based on a “review on the merits of all questions presented under State and Federal law, including the nature of the product or activity and the history and purpose of its regulation under State and Federal law, without unequal deference.” § 304(e) (1999).
The dissent argues that there is no Article III standing in this case. With all due respect to Judge King, we disagree. In enacting the GLBA, Congress gave this Court original jurisdiction where there is a regulatory conflict between a State insurance regulator and a Federal regulator regarding insurance issues, including preemption issues. See § 304(a) (1999). The language of the GLBA, therefore, gives this Court jurisdiction over controversies in which a State regulator conflicts with the Federal regulator regarding the regulation of insurance issues. This grant of jurisdiction is, however, subject to Article III standing limitations.
*395 To have Article III standing, a litigant must show that: “1) it has suffered an ‘injury in fact’ that is a) concrete and particularized and b) actual or imminent, not conjectural or hypothetical; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.” Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). In the instant case, the Preemption Letter causes banks to change their business plans and business practices and therefore conflict with the West Virginia laws. West Virginia therefore suffers because it cannot enforce certain provisions of its insurance laws against national banks. To undermine the sovereign’s authority to regulate activity for the protection of its citizens constitutes injury in fact. Thus, the first prong of the test for Article III standing is met.
It is clear that the injury is traceable to the OCC’s action, which is challenged in this case, thus satisfying the second prong of the test for Article III standing. Finally, if this Court were to rule in the Petitioners’ favor, West Virginia’s grievance would be redressed, because the state would be able to compel national banks to comply with its insurance laws. Accordingly, we find that Article III standing exists in this case.
III.
There are three issues before this Court. First, we must address whether the OCC has authority to interpret the GLBA. Second, if the OCC does have interpretive authority, we must determine what deference should be given to the OCC. Finally, we must determine whether the preemption of West Virginia law was a proper exercise of the OCC’s interpretive authority.
A.
Petitioners argue that an agency is without power to preempt state law unless Congress specifically delegates authority to an agency.[4] See Petitioners’ Br. at 30. They are correct in their assertion that the GLBA does not give the OCC express power of interpretation. However, an administrative agency’s authority need not be expressly delegated by Congress. “Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit.” Chevron v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).
It is clear from the language of the GLBA that Congress contemplated that the OCC would interpret some provisions of the GLBA. Section 104(d)(2)(C)(l) is titled “OCC Deference” and applies to state statutes enacted before September 3, 1998. Had Congress not anticipated OCC action interpreting the GLBA, there would be no need for an “OCC Deference” provision of the GLBA. Therefore, we find that the OCC has implicit interpretive authority under the GLBA. Accordingly, we turn *396 now to determine the scope of that authority.
We look to statutes and other authorities related to the GLBA to determine the scope of the OCC’s implicit interpretive authority under the GLBA. The GLBA addresses the ability of national banks to engage in insurance sales, solicitation and crossmarketing. Similarly, the National Bank Act (“NBA”), 12 U.S.C. § 1 et seq., addresses the ability of national banks to engage in insurance sales in small towns. Under § 92 of the NBA, the OCC has explicit authority to regulate the sale of insurance by national banks located in small towns. See 12 U.S.C.A. § 92 (2001). The GLBA, in essence, expands the scope of § 92 to permit national banks to engage in insurance sales nationwide. Therefore, because Congress previously granted explicit interpretive authority to the OCC in § 92 of the NBA and the GLBA is an expansion of § 92, we find that the OCC must have implicit interpretive authority under the GLBA.
B.
We turn now to examine whether the OCC is entitled to deference in this case. The GLBA instructs this Court to decide petitions filed under Section 304 “without unequal deference” to its review of all questions presented under State and Federal law. See § 304(e) (1999). However, where a statute was issued, adopted or enacted before September 3, 1998, deference should be given to the OCC. See § 104(d)(2)(C)® (1999) (“OCC Deference: Section 304(e) does not apply with respect to any State statute, regulation, order, interpretation, or other action regarding in-suranee sales, solicitation, or cross marketing activities described in subparagraph (A) that was issued, adopted, or enacted before September 3, 1998, and that is not described in subparagraph (B).” (emphasis added)). The West Virginia Insurance Sales Consumer Protection Act was enacted in 1997. Additionally, the statutes at issue in the instant case do not fall within the categories of preserved state laws enumerated under § 104(d)(2)(B). Therefore, in accordance with § 104(d)(2)(C)® of the GLBA, we give deference to the OCC.
Although the OCC is entitled to some deference, the GLBA does not provide guidance as to what level of deference is appropriate.[5] The OCC argues that the deference enunciated in Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), should be applied in the instant case. Under Skidmore, a court should give some consideration to the interpretation of an ambiguous statutory provision made by the administering agency because of the agency’s experience and expertise. See 323 U.S. at 140. The Supreme Court held in Christensen v. Harris County, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), that agency “interpretations contained in formats such as opinion letters are ‘entitled to respect’ ” under Skidmore, “but only to the extent that those interpretations have the ‘power to persuade.’ ” Christensen, 529 U.S. at 587, 120 S.Ct. 1655 (citations omitted). Therefore, we hold that Skidmore deference applies to this case.
C.
We now must review the Preemption Letter to see if it meets the standard for *397 persuasiveness under Skidmore. See Skidmore at 140. In reviewing persuasiveness, we must consider the thoroughness of the OCC’s consideration, the validity of its reasoning, and its consistency with earlier and later pronouncements. Id.
Section 6 of the West Virginia Act prohibits financial employees with lending responsibilities from soliciting the sale of insurance. Section 9(a) requires disclosures to be made in writing, “including in connection with advertisements and promotional material, and orally ‘during any customer contact.’ ” Section 10(a) prohibits financial institutions from making an insurance-related referral or solicitation of a loan customer until after the bank has approved the loan or credit. Section 13 requires a customer’s separate written consent to the bank’s disclosure of insurance information to an agent or broker affiliated with the bank no less than two days after the time of application for, approval of and making of the loan or extension of credit. Finally, Section 14 requires banks to sell insurance products in an area separate and distinct from the institution’s lending and deposit-taking activities.
The OCC found that these provisions of the West Virginia Act were preempted by federal law. See Preemption Letter at 2. In reaching its result, the OCC relied on public comments received during the formal notice-and-comment procedure. Id. at 2. Additionally, the OCC “relied on the written comment submitted by the Insurance Commissioner for the State of West Virginia and on discussions with the staff of the West Virginia Insurance Department” to clarify how particular provisions of the West Virginia Act would be administered or applied. Id. Because the OCC implemented a formal notice-and-comment procedure and consulted the West Virginia Insurance Department and the Insurance Commissioner of West Virginia in reaching its decision, we find that the OCC’s consideration was thorough.
We turn now to review the validity of the OCC’s reasoning. In making its findings, the OCC reasoned that the West Virginia provisions at issue are disruptive to bank operations, increase bank operating costs, and substantively affect a bank’s ability to solicit and sell insurance products. See Preemption Letter at 16-31 (J.A. 73-88). These effects prevent or significantly interfere with a bank’s ability to engage in insurance sales, solicitation, or crossmarketing activity. Additionally, the OCC found that the requirements under Section 13 violate the Fair Credit Reporting Act, which prohibits States laws that imposement requirements or prohibitions regarding “the exchange of information among persons affiliated by common ownership or common corporate control.” 15 U.S.C.A. § 1681t(b)(2) (1998). Because we find that the OCC’s reasoning to be valid, we hold that the Preemption Letter meets the standard for persuasiveness under Skidmore.
IV.
Because we hold that the OCC had authority to interpret the GLBA and that its decision met the standard for persuasiveness under Skidmore, we dismiss the petition for review.

DISMISSED.

LUTTIG, Circuit Judge, concurring in the judgment.
I agree with the judgment reached by the court that this action should be dismissed. I also agree, for the reasons stated in the OCC opinion letter and those articulated by counsel for the OCC during oral argument, that the West Virginia provisions at issue are preempted under federal law.

. The relevant provisions of the GLBA, Sections 104 and 304, are codified at 15 U.S.C. §§ 6701 and 6714, respectively. In this opinion, we cite Sections 104 and 304 of the GLBA, rather than to the provisions as codified.

. The West Virginia Bankers Association is a banking trade association consisting of community banks, regional banks, and savings and loans located in West Virginia.

. The Joint Appendix is cited as J.A. in this opinion.

. Petitioners also argue that Congress intended that states would remain the functional regulators of insurance and that state insurance regulations could only be negated by a federal agency in extremely limited circumstances. See Petitioners’ Br. at 32. However, the preservation of state authority under GLBA is subject to the provisions of § 104, where the preemption statute is found. See Gramm-Leach-BIiley Act of 1999, Pub. L. No. 106-102, § 301 (1999). Therefore, state authority that prevents or significantly interferes with a depository institution’s ability to engage in insurance sales, solicitation, or cross-marketing is still preempted under the GLBA.

. The briefs submitted to this Court by the Petitioners and Intervenors argue that deference should not be given to the OCC under the Chevron standard. During oral argument, however, the OCC stated that it was not arguing for Chevron deference because its regulation writing authority does not come from the GLBA; rather, its authority to write regulations originates in the National Banking Act.