BANK OF AMERICA, N.A.,
et al., Plaintiffs,

v.

CITY OF DALY CITY, CALIFORNIA,
et al., Defendants.

Nos. C 02–4343 CW, C 02–4943 CW.

United States District Court,
N.D. California.

July 29, 2003.

E. Edward Bruce, Keith A. Noreika, Richard C. Darwin, Stuart C. Stock, Vince Chhabria, Covington & Burling, San Francisco, CA, for Plaintiffs.

Neil H. O'Donnell, Paul M. Zieff, Rogers, Joseph, O'Donnell & Phillips, San Francisco, CA, John D. Nibbelin, Michael P. Murphy, Portor Goltz, Office of the County Counsel, San Mateo, CA, Thomas F. Casey, III, Redwood City, CA, for Defendants.

Kelly M. Flanagan, Office of the County Counsel, Martinez, CA, Jeanine B. Nadel, County Counsel Office of Alameda County, Oakland, CA, for Consol. Defendants.

Gary A. Hernandez, Jennifer A. Bunshoft, Paula M. Yost, Philip A. O'Connell, Jr., Sonnenschein, Nath & Rosenthal, San Francisco, CA, David F. Freeman, Jr., Dennis G. Lyons, Howard N. Cayne, Michael C. O'Brien, Nancy L. Perkins, Arnold & Porter, Washington, DC, Laurence J. Hutt, Arnold & Porter, Los Angeles, CA, Horace G. Sneed, Office of the Comptroller of the Currency, Washington, DC, Seth E. Mermin, California Department of Justice, San Francisco, CA, for Amicus.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

WILKEN, District Judge.

Plaintiffs Bank of America, N.A.; Bank of America, N.A. (USA); Bank of America Investment Services, Inc.; Banc of America Insurance Services, Inc.; Wells Fargo Bank, N.A.; Wells Fargo Bank Nevada, N.A.; Wells Fargo Insurance, Inc.; and Wells Fargo Home Mortgage Co., Inc. have sued challenging local consumer privacy ordinances as preempted under federal law. Defendants are the City of Daly City, California; County of San Mateo, California; County of Contra Costa, California; and various county and municipal officers. Plaintiffs filed a motion for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. Defendants oppose Plaintiffs' motion and have filed a cross-motion for summary judgment, which Plaintiffs oppose. The matter was heard on May 30, 2003. After consideration of all the papers filed by the parties and oral argument on the motion, the Court GRANTS Plaintiffs' motion in part and DENIES it in part and GRANTS Defendants' motion in part and DENIES it in part. The Court declares that the ordinances at issue are preempted under federal law to the extent that the ordinances restrict the sharing of confidential consumer information between financial institutions and their affiliates. The Court enjoins enforcement of the ordinances to that extent. The Court upholds the ordinances' restrictions on the sharing of information between financial institutions and non-affiliated third parties.

### BACKGROUND [1]

#### I. The Parties

Plaintiff Bank of America, N.A. ("Bank of America") is a national banking associa-

---

1. Unless otherwise noted, there is no material dispute as to the following facts.

tion. Plaintiffs Bank of America, N.A. (USA) ("BAUSA"); Banc of America Investment Services, Inc. ("BAI"); and Bank of America Insurance Services, Inc. ("BAI-SI") are affiliates of Bank of America that use Bank of America's customer information to conduct business and to sell credit card, securities and other products to Bank of America customers.

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo Bank") is also a national banking association. Plaintiffs Wells Fargo Bank Nevada, N.A. ("WFBN"); Wells Fargo Insurance, Inc. ("WFII"); and Wells Fargo Home Mortgage Co., Inc. ("WFHM") are affiliates of Wells Fargo Bank that use Wells Fargo customer information to sell credit card, insurance and mortgage products to Wells Fargo Bank customers.

All Plaintiffs maintain offices or conduct business and other activities in Daly City, San Mateo County and Contra Costa County, California.

Defendant City of Daly City, California is a municipal corporation. Defendants Michael P. Guingona, Adrienne Tissier, Maggie Gomez, Gonzalo Torres, Carol L. Klatt, Helen R. Flowerday and Stanley Gustavson are Daly City officials.

Defendant San Mateo County, California is an unincorporated organization exercising local government authority, pursuant to State law, over unincorporated areas of San Mateo County. Defendants Jerry Hill, Rose Jacobs Gibson, Mark Church, Richard S. Gordon, Michael D. Nevin, John Maltbie and Tom Casey are San Mateo County officials.

Defendant Contra Costa County, California is an unincorporated organization exercising local government authority, pursuant to State law, over unincorporated areas of Contra Costa County. Defendants John M. Gioia, Gayle B. Uilkema, Donna Gerber, Mark DeSaulnier, Federal Glover, John W. Sweeten and Silvano B. Marchesi are Contra Costa County officials.

## II. Facts

Plaintiffs challenge Contra Costa County Ordinance No. 2002–30(CCO), which was enacted September 24, 2002 and amended November 5, 2002 and February 25, 2003; Daly City Ordinance No. 1295(DCO), which was enacted September 9, 2002 and amended November 12, 2002; and San Mateo County Ordinance No. 04126(SMO), which was enacted August 6, 2002 and amended Nov. 5, 2002. Plaintiffs seek a judicial declaration that the ordinances are preempted by the Fair Credit Reporting Act (FRCA), 15 U.S.C. §§ 1681 *et seq.*, the Gramm–Leach–Bliley Act (GLBA), 15 U.S.C. §§ 6801 *et seq.* and the National Bank Act (NBA), 12 U.S.C. §§ 21 *et seq.* They also seek a permanent injunction barring Defendants from enforcing the ordinances and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988.

The three ordinances, which are substantially similar, are intended to afford consumers greater financial privacy protection than is provided in the federal GLBA. *See* CCO § 518–4.202(a); DCO § 5.92.010(a); SMO § 5.140.010(a).

The ordinances bar financial institutions operating in the relevant jurisdictions from disclosing or sharing confidential consumer information to affiliates or non-affiliated third parties without written notice to the consumer and a consent acknowledgment from the consumer. *See* CCO § 518–4.602(a); DCO § 5.92.020(a); SMO § 5.140.030(a). Essentially, the ordinances require financial institutions to obtain a consumer's consent, or "opt-in," prior to releasing confidential information about the consumer, rather than merely requiring the banks to allow consumers to "opt-out" of such information disclosures. The ordinances expressly apply to disclosures

to financial institutions' affiliates, as well as to disclosures to non-affiliated third parties. However, the ordinances include numerous exceptions to this prohibition against disclosing or sharing confidential consumer information without opt-in. *See* CCO § 518–4.606; DCO § 5.92.040; SMO § 5.140.050.

## DISCUSSION

### I. Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Ins. Co. of N. Am.,* 815 F.2d 1285, 1288–89 (9th Cir.1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Eisenberg,* 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991).

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a *prima facie* showing in support of its position on that issue. *See UA Local 343 v. Nor–Cal Plumbing, Inc.,* 48 F.3d 1465, 1471 (9th Cir.1994). That is, the moving party must present evidence that, if uncontroverted at trial, would enti-

tle it to prevail on that issue. *See id.; see also Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264–65 (5th Cir.1991). Once it has done so, the non-moving party must set forth specific facts controverting the moving party's *prima facie* case. *See UA Local 343,* 48 F.3d at 1471.

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1409 (9th Cir.1991), *cert. denied,* 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991). Here, no facts material to the Court's decision on this motion are disputed. The issue is one of law.

### II. Plaintiffs' Motion

#### A. Preemption by Federal Law

The Ninth Circuit has stated:

In determining whether a municipal ordinance is preempted by federal law, our sole task is to ascertain the intent of Congress.... Federal law may preempt state law in three different ways. First, Congress may preempt state law by so stating in express terms.... Second, preemption may be inferred when federal regulation in a particular field is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.... In such cases of field preemption, the mere volume and complexity of federal regulations demonstrate an implicit congressional intent to displace all state law....

Third, preemption may be implied when state law actually conflicts with federal law.... Such a conflict arises when compliance with both federal and state regulations is a physical impossibility ... or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress ....

*Bank of America v. City and County of San Francisco*, 309 F.3d 551, 557–58 (9th Cir.2002) (internal quotations and citations omitted), *cert. denied* —— U.S. ——, 123 S.Ct. 2220, 155 L.Ed.2d 1127. Ordinarily, preemption analysis begins with a presumption against preemption. *See id.* at 558. "However, the presumption is not triggered when the State regulates in an area where there has been a history of significant federal presence." *Id.* (citing *United States v. Locke*, 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000)) (internal quotations omitted). Banking, the area addressed by the ordinances, is one such area. *Id.*, 309 F.3d at 558 ("[B]ecause there has been a 'history of significant federal presence' in national banking, the presumption against preemption of state law is inapplicable.").

"The first and most important step in construing a statute is the statutory lan-guage itself." *Royal Foods Co., Inc. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1106 (9th Cir.2001) (citing *Chevron USA v. Natural Res. Def. Council*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). The "task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Sprietsma v. Mercury Marine, a Div. of Brunswick Corp.*, 537 U.S. 51, 123 S.Ct. 518, 526, 154 L.Ed.2d 466 (2002) (citation omitted).

### 1. Fair Credit Reporting Act

Plaintiffs argue that the ordinances are preempted by the preemption provisions of the FCRA, 15 U.S.C. § 1681t(b)(2), insofar as the ordinances impose restrictions on the sharing of confidential consumer information between financial institutions and their affiliates, such as between Bank of America and its affiliate Bank of America, N.A. (USA).

The question the Court must resolve is the breadth of this preemption provision and whether it encompasses the ordinances at issue in this case. This appears to be a question of first impression in this circuit.[2]

**2.** The Court is aware of only one, unreported, opinion addressing preemption under § 1681t(b)(2), *Cline v. Hawke*, 51 Fed.Appx. 392 (4th Cir.2002) (unreported). That opinion addresses § 1681t(b)(2) only in passing, noting that § 1681t(b)(2) was listed as an additional basis for preemption in an United States Office of the Comptroller of the Currency (OCC) letter concluding that a West Virginia insurance consumer protection statute was partially preempted under the GLBA and other federal statutes. *See id.* at 397. The OCC letter states in pertinent part:

> The FCRA preemption provision ensures that affiliated entities may share customer information without interference from State law and subject only to the FCRA notice and opt-out requirements if applicable.

> The preemption is broad and extends beyond state information sharing statutes to preempt any State statute that affects the ability of an entity to share any information with its affiliates. Congress intended the preemption provision to establish a national uniform standard in this area, noting that "credit reporting and credit granting are, in many aspects, national in scope, and that a single set of Federal rules promotes operational efficiency for industry, and competitive prices for consumers."

Letter from Julie L. Williams, First Senior Deputy Comptroller and Chief Counsel, Office of the Comptroller of the Currency, to Sandra Murphy, Bowles Rice McDavid Graff & Love (Sept. 24, 2001) (available at http://www.occ.treas.gov/ftp/release/2001–86a.pdf).

Passed in 1968, the FCRA regulates consumer credit reporting and related uses of information about consumers. When the FCRA was enacted, it contained a broad State law savings clause, preserving State and local regulation of consumer information practices from preemption under the FCRA so long as such regulation was not inconsistent with the FCRA. That clause, former 15 U.S.C. § 1681t, governed the relation of the FCRA to State laws. As originally enacted, § 1681t stated in its entirety:

This subchapter [15 U.S.C. §§ 1681 to 1681u] does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

In 1996, the FCRA was amended by the Consumer Credit Reporting Reform Act (CCRRA), Pub.L. No. 104–208, Div. A., Title II (Sept. 30, 1996). The CCCRA, *inter alia,* redesignated the original text of § 1681t as subsection (a) and added new subsections (b), (c) and (d). New subsection (b) added exceptions to the originally enacted State law savings clause. This includes subsection (b)(2), an exception relating to State regulation of information-sharing among affiliates. Section 1681t(b)(2) states in relevant part:

No requirement or prohibition may be imposed under the laws of any State ... with respect to the exchange of information among persons [3] affiliated by common ownership or common corporate control . . . .

It is this exception on which Plaintiffs rely for their FCRA preemption argument. Defendants respond that the FCRA is a consumer protection statute regulating the consumer credit reporting industry and therefore the term "information" as used in § 1681t(b)(2) should be interpreted to refer only to consumer reports. A "consumer report" is defined in the FCRA as

any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under [15 U.S.C. § 1681b].

15 U.S.C. § 1681a(d)(1). A "consumer" is defined as "an individual." *See id.* at § 1681a(c).

Defendants base this argument that the term "information" as used in § 1681t(b)(2) should be construed to mean "consumer report" on the intent of the CCRRA amendments. According to Defendants, the CCCRA amendments were enacted, *inter alia,* to clarify that information shared between affiliated companies should not be treated as a consumer report regulated under the FCRA.

Defendants contend that the intent of the CCRRA amendments to § 1681t(b)(2) is demonstrated by 15 U.S.C. §§ 1681a(d)(2)(A)(ii), 1681a(d)(2)(A)(iii) [4]

---

**3.** "Person" is defined to include a corporation or other entity. *See* 15 U.S.C. § 1681a(b).

**4.** In 1998, Section 1681a(d)(2)(A)(iii) was subject to a minor technical amendment that

does not affect the present analysis. *See* Pub.L. No. 105–347, § 6(1) (Nov. 2, 1998).

and 1681m(b)(2)(C)(i)(I), which were also added by the CCRRA. Defendants rely on the fact that these provisions all refer to "persons related by common ownership or corporate control." Sections 1681a(d)(2)(A)(ii) and 1681a(d)(2)(A)(iii) are exceptions to the definition of a consumer reports. Section 1681a(d)(2)(A)(ii) exempts from the definition of a consumer report

> communication of . . . information [relating to transactions or experiences between the consumer and the person communicating the information] among persons related by common ownership or affiliated by corporate control.

Section 1681a(d)(2)(A)(iii) exempts from the definition of a consumer report "any . . . communication of other information [i.e., information other than transaction or experience information] among persons related by common ownership or corporate control," so long as the consumer receives prior notice and has the opportunity to opt-out.

Section 1681m(b)(2) sets out duties of a person who takes an action adverse to a consumer based on information "furnished to the person taking the [adverse] action by a person related by common ownership or affiliated by common corporate control to the person taking the action." 15 U.S.C. § 1681m(b)(2)(C)(i)(I). These duties include providing notice to the consumer and disclosing the nature of the information to the consumer. *See id.* at § 1681m(b)(2)(A).

Therefore, Defendants argue that §§ 1681a(d)(2)(A)(ii), 1681a(d)(2)(A)(iii) and 1681m(b)(2)(C)(i)(I) "serve the common purpose of clarifying the FCRA's treatment of affiliate sharing." Def.s' Opposition at 24. As such, Defendants contend,

> [t]he only logical interpretation of section 1681t(b)(2) is that it was meant to extend this new treatment for affiliate sharing to the State level, i.e., that State FCRA laws would also not regulate affiliate sharing as a part of the consumer reporting industry.

*Id.*

The Court disagrees. Defendants' construction would render § 1681t(b)(2) superfluous. This is because no amendment of § 1681t would have been necessary to extend the CCRRA provisions regarding affiliate information-sharing to the State level. Under the original text of § 1681t, any provision of State law inconsistent with §§ 1681a(d)(2)(A)(ii), 1681a(d)(2)(A)(iii) and 1681m(b)(2)(C)(i)(I) would have been preempted.

However, Congress chose to go beyond this, expressly preempting State laws that impose a requirement or prohibition on information-sharing among affiliates. In the CCRRA amendments, Congress exempted affiliate information-sharing from the generally applicable consumer protection provisions of the FCRA and prohibited States from providing any additional protection to consumers in that context.

■ Thus, the Court rejects Defendants' proposed construction of "information," used in § 1681t(b)(2), as limited to consumer reports. Such a construction is inconsistent with §§ 1681a(d)(2)(A)(ii) and 1681a(d)(2)(A)(iii), which expressly exempt information shared among affiliates from the definition of a consumer report. The Court concludes that "information," as used in § 1681t(b)(2), encompasses the confidential consumer information that is the subject of the ordinances.[5]

---

5. Amicus Attorney General of the State of California argues that such a construction is improper because it would preempt a large number of State tort and criminal laws relating to trade secrets, conspiracy and other issues in situations involving information-sharing among affiliates. The Attorney General's scenario would come to pass only if "information" were construed to mean information not related to a consumer. The Court does not so construe the term. The FCRA

a. The GLBA State Law Savings Clause and the FCRA Preemption Provision

Defendants further argue that State law savings clause of the GLBA, chapter 94, subchapter I, 15 U.S.C. § 6807, protects the ordinances from preemption by the FCRA, 15 U.S.C. § 1681t(b)(2). Enacted in 1999, the GLBA is a wide-ranging financial services deregulation act affecting banking, securities, insurance and other industries.

The GLBA also includes a number of provisions regarding consumer privacy. Section 6807(a) states:

This subchapter [codified at 15 U.S.C. §§ 6801–6809] and the amendments made to this subchapter shall not be construed as superseding, altering, or affecting any statute, regulation, order, or interpretation in effect in any State, except to the extent that such statute, regulation, order, or interpretation is inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency.

Section 6807(b) further states:

For purposes of this section, a State statute, regulation, order, or interpretation is not inconsistent with the provisions of this subchapter if the protection such statute, regulation, order, or interpretation affords any person is greater than the protection provided under this subchapter and the amendments made by this subchapter . . . .

Chapter 94, subchapter I states that "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a). The subchapter sets forth obligations of financial institutions with respect to the disclosure of consumers' personal information, requiring financial institutions to provide notice of their privacy policies to consumers and an opportunity for consumers to opt out of the disclosure of their personal information. *See id.* at §§ 6802 and 6803.

Further, the privacy requirements of the subchapter apply only to the "disclos[ure] of nonpublic personal information to a nonaffiliated third party." [6] *See id.* at § 6802(b)(1). The subchapter imposes no requirements with respect to information-sharing among affiliates.[7] Instead, it directs the Secretary of the Treasury, together with other agencies, to "conduct a study of information sharing practices among financial institutions and their affiliates" to be submitted to Congress no later than January 1, 2002. *See id.* at § 6808(a).

As noted, the § 6807(a) savings provision states that it applies only to preemption under chapter 94, subchapter I. It does not address preemption under any other provision of law. Defendants' argument on this point is similar to the one addressed by the Ninth Circuit in *Bank of America.* At issue in *Bank of America* was whether a State law savings provision in the Electronic Funds Transfer Act (EFTA) would prevent preemption of a local ordinance by the Home Owners' Loan Act and the NBA. The EFTA savings pro-

---

regulates the use and distribution of consumer information, as contained in consumer reports and other sources. The Court discerns no intent by Congress that the FCRA preempt State tort and criminal laws unrelated to consumer information.

**6.** A "nonaffiliated third party" is defined as "any entity that is not an affiliate of, or relat-

ed by common ownership or affiliated by corporate control with, the financial institution, but does not include a joint employee of such institution." 15 U.S.C. § 6809(5).

**7.** An "affiliate" is defined as "any company that controls, is controlled by, or is under common control with another company." 15 U.S.C. § 6809(6).

vision, which is substantially similar to the § 6807(a) savings provision, states:

> This subchapter does not annul, alter, or affect the laws of any State relating to electronic fund transfers, except to the extent that those laws are inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency. A State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection afforded by this subchapter.

15 U.S.C. § 1693q. The Ninth Circuit concluded that the EFTA savings provision was limited to preemption under the relevant subchapter of the EFTA. *See Bank of America,* 309 F.3d at 565 ("Section 1693q's reference to 'this subchapter' indicates that the EFTA's anti-preemption provision does not apply to other statutes.").[8]

▉ Defendants argue that interpreting the FCRA provision, 15 U.S.C. § 1681t(b)(2), as Plaintiffs suggest, to prohibit States from regulating the exchange of consumer information among affiliates, would render the GLBA savings provision set out at § 6807(a) meaningless. This is not so. The GLBA does not regulate information-sharing among affiliates. Therefore, § 6807(a) does not save the ordinance provisions regarding affiliate information-sharing from preemption. The FCRA does regulate affiliate information-sharing and § 1681t(b)(2) expressly

preempts State laws that impose requirements or prohibitions regarding such information-sharing. Thus, there is no conflict between the GLBA provision, § 6807(a), and the FRCA provision, § 1681t(b)(2). States and local governments are free to enact law affording some protection to consumer privacy greater than that provided by federal law, but not with regard to the disclosure of information to affiliates. This position has garnered support among the legal commentators who have addressed the issue. *See, e.g.,* Neal R. Pandozzi, *Beware of Banks Bearing Gifts: Gramm–Leach–Bliley and the Constitutionality of Federal Financial Privacy Legislation,* 55 U. Miami L.Rev. 163, 211–12 (2001); James M. Cain and John J. Fahey, *Banks and Insurance Companies—Together in the New Millennium,* 55 Bus. Law. 1409, 1413–14 (2000).

The Court also rejects the proposition that the GLBA savings provision, § 6807(a), supersedes the FCRA provision, § 1681t(b)(2). The GLBA expressly states that "nothing in [Chapter 94, codified at 15 U.S.C. §§ 6801–27] shall be construed to modify, limit, or supersede the operation of the Fair Credit Reporting Act." 15 U.S.C. § 6806.

### 2. GLBA Preemption Provision

Plaintiffs also argue that the ordinances are preempted under an express preemption provision of the GLBA regarding insurance marketing and sales: 15 U.S.C. § 6701(d)(2)(A).[9] Plaintiffs contend that

---

**8.** Relying on *Bank of America,* the district court in *American Bankers Association v. Lockyer,* 239 F.Supp.2d 1000, 1009 (E.D.Cal. 2002) reached a similar conclusion with regard to a State law savings provision in the Truth in Lending Act (TILA), 15 U.S.C. § 1610(a)(1). The TILA savings provision states that the TILA preempts State laws only to the extent that State laws are inconsistent with "this subchapter" (i.e., the TILA). *See* 15 U.S.C. § 1610(a)(1). The court in *American Bankers* held: "The text provides no indi-

cation that the savings clause reaches beyond TILA to control the preemption analysis applicable under any other federal laws, including the federal banking laws."

**9.** This provision is codified at chapter 93 of Title 15 of the United States Code. As such, the GLBA savings provision, § 6807, which as discussed *supra* addresses only preemption under chapter 94, subchapter I, does not apply.

this provision of the GLBA preempts the ordinances with respect to affiliate disclosures in the context of insurance sales. The Court having concluded that the ordinances are preempted by the FCRA with regard to affiliate disclosures, it need not consider this argument.

■ In a footnote, Plaintiffs further contend that the GLBA provision, § 6701(d)(2)(A), preempts the ordinances with respect to disclosures to third parties in the insurance context. The Court disagrees. Section § 6701(d)(2)(A) states:

> In accordance with the legal standards for preemption set forth in the decision of the Supreme Court of the United States in *Barnett Bank of Marion County N.A. v. Nelson,* 517 U.S. 25, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996), no State may, by statute, regulation, order, interpretation, or other action, prevent or significantly interfere with the ability of a depository institution, or an affiliate thereof, to engage, directly or indirectly, either by itself or in conjunction with an affiliate or any other person, in any insurance sales, solicitation, or crossmarketing activity.

The ordinances do not in any way limit insurance sales. All of the ordinances expressly state that they do not prohibit financial institutions from marketing their own products and services to their customers. *See* CCO § 518–4.602(b); DCO § 5.92.020(d); SMO § 5.140.030(b). Depository institutions and their affiliates can solicit, sell and cross-market insurance separately, jointly, or with others in full compliance with the ordinances. The ordinances merely impose restrictions on the disclosure of consumer information.

The cases cited by Plaintiffs, *Association of Banks in Ins., Inc. v. Duryee,* 270

F.3d 397, 409–10 (6th Cir.2001) and *Cline v. Hawke,* 51 Fed.Appx. 392 (4th Cir.2002) (unreported), are inapposite. *Association of Banks* involved Ohio insurance laws preventing the "licensing of persons who were not intending to do a general insurance business, but simply to supplement their primary business," which was determined to include national banks. *See Association of Banks,* 270 F.3d at 401. *Cline* involved a West Virginia insurance sales consumer protection statute "regulating the sale of insurance by banks and other financial institutions." *Cline,* 51 Fed.Appx. at 394. The ordinances do not impose any such restrictions on insurance sales, solicitation or marketing.

### 3. National Bank Act

Plaintiffs and Amicus United States Office of the Comptroller of the Currency argue that the ordinances are preempted by the NBA, 12 U.S.C. § 24, and the regulations issued pursuant thereto to the extent that the ordinances restrict disclosure of consumer information to affiliates. Having concluded that the ordinances are preempted by the FCRA to the extent that they restrict such affiliate disclosure, the Court need not consider Plaintiffs' arguments regarding the NBA.[10]

### B. Severability

■ The Court having concluded that the ordinances are preempted under the FCRA to the extent that they restrict disclosure of information among affiliates, the question is whether the preempted provisions are severable from the remainder of the ordinances. Severability is a question of State law. *See City of Auburn v. Qwest Corp.,* 260 F.3d 1160, 1180 (9th

---

**10.** Plaintiffs have filed declarations in support of their argument that the ordinances are preempted under the NBA. Defendants have filed motions to strike and exclude these declarations. The Court not needing to address preemption under the NBA, these motions to strike and exclude are denied as moot.

Cir.2001). The California Supreme Court has set forth "three criteria for severability: the invalid provision must be grammatically, functionally, and volitionally separable." *Calfarm Ins. Co. v. Deukmejian,* 48 Cal.3d 805, 821, 258 Cal.Rptr. 161, 771 P.2d 1247 (1989). A provision is grammatically or mechanically severable "where the valid and invalid parts can be separated by paragraph, sentence, clause, phrase, or even single words." *Santa Barbara Sch. Dist. v. Superior Court,* 13 Cal.3d 315, 330, 118 Cal.Rptr. 637, 530 P.2d 605 (1975). A provision is functionally severable where the remaining portion of the enactment "is complete in itself." *People's Advocate, Inc. v. Superior Court,* 181 Cal.App.3d 316, 332, 226 Cal.Rptr. 640 (1986). A provision is volitionally severable if "the remainder . . . would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute."

■ The ordinances meet the first criterion of grammatical or mechanical separability. The preempted restrictions regarding disclosure of information among affiliates may be severed by striking the words: "any affiliate or" in SMO § 5.140.020(f); "an affiliate or" in SMO § 5.140.020(*l*); "or affiliate" where they appear in CCO § 518–4.602(a) and SMO § 5.14.030(a); "or to any affiliate" in CCO § 518–4.604(a) and SMO § 5.14.040(a); "affiliate or" in CCO § 518–4.608(a), DCO § 5.92.050(a) and SMO § 5.14.060(a); "including an affiliate or agent of that financial institution, or a subsidiary" in DCO § 5.92.020(a); "or affiliate" in DCO § 5.92.020(b); and "affiliated or" in DCO § 5.92.020(b)(10).

The ordinances also satisfy the second criterion regarding functionality. Even with the affiliate disclosure provisions severed, the ordinances are complete in themselves, imposing an opt-in requirement for the disclosure of consumer information to non-affiliated third parties.

The ordinances meet the requirements of the third, volitional criterion. Each ordinance contains a severability clause that directs that any invalid provision, which may be "any section, subsection, phrase, clause, sentence or word," be considered a "separate, distinct, and independent" part of the ordinance. *See* CCO § 518–4.614; DCO § 10; SMO § 5.140.090. Accordingly, the Court severs the preempted provisions of the ordinances and finds the remaining provisions not preempted.

**C. Declaratory and Permanent Injunctive Relief**

Defendants agree that declaratory and injunctive relief would be appropriate if the Court were to grant Plaintiffs' motion.

**D. Section 1983 Claim**

The parties agree that the Court need not consider Plaintiffs' 42 U.S.C. § 1983 cause of action unless and until Plaintiffs seek attorneys' fees under 42 U.S.C. § 1988.

**III. Defendants' Motion**

As discussed above, the Court concludes that the provisions of the ordinances regarding information-sharing between affiliates is preempted under the FRCA. However, the remaining provisions of the ordinances, including those regarding disclosure to nonaffiliated third parties, are not preempted. Defendants are entitled to partial summary judgment in their favor with regard to the remaining provisions.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for summary judgment (Docket No. 65) is GRANTED IN PART and DENIED IN PART. Defendants' cross-motion (Docket No. 82) is GRANTED IN PART and DENIED IN PART. The

Court will enter a declaratory judgment that the provisions of the ordinances restricting disclosure of information among affiliates are invalid pursuant to the FCRA and will enjoin Defendants and private parties from enforcing these provisions. These provisions are severed from the ordinances as set forth in this order. The remainder of the ordinances, including the provisions regarding disclosures to non-affiliated third parties, are valid. Plaintiffs' request for a declaratory judgment and permanent injunction as to them is DENIED.

The Court DENIES AS MOOT Plaintiffs' motion for a preliminary injunction barring enforcement of the Contra Cost County, Daly City and San Mateo County ordinances (Docket No. 103) and Plaintiffs' related "ex parte" motion to shorten time to hear that motion (Docket No. 104). Defendants' motions to strike and exclude declarations filed by Plaintiffs in support of their summary judgment motion (Docket Nos. 80 and 81) are also DENIED AS MOOT.

Plaintiffs shall file and serve a notice within ten days of the date of this order indicating whether they wish to pursue their § 1983 cause of action, and if they do, a proposed or stipulated briefing schedule. If they do not, final judgment shall enter as indicated above and providing that each party shall bear its own costs. The permanent injunction and declaratory judgment described above will issue when final judgment is entered.

IT IS SO ORDERED.